IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| PATRICE JORDAN ROBINSON, <br> GREATER MEMPHIS DEMOCRATIC CLUB, <br> LATANYA BARBER THOMAS, and, <br> JOHNSON SAULSBERRY, III, <br><br> Plaintiffs, <br><br> vs, <br><br> SHELBY COUNTY ELECTION COMMISSION, <br> LINDA PHILLIPS, in her official capacity as <br> Administrator of the Shelby County Election <br> Commission, STEVE STAMSON, ANTHONY TATE, <br> MATT PRICE, BENNIE SMITH, and <br> BRENT TAYLOR, in their official capacities as <br> Members of the Board of Commissioners of the <br> Shelby County Election Commission, <br><br> Defendants. | Docket No.  19-cv-2653-JTF-tmp |

PLAINTIFFS MEMORANDUM IN SUPPORT
MOTION FOR PRELIMINARY INJUNCTION

COMES NOW Plaintiffs, by and through counsel, and files this Memorandum in Support of their Motion for a Preliminary Injunction ("Motion") against Shelby County Election Commission, Linda Phillips in her official capacity as Administrator of the Shelby County Election  Commission, Steve Stamson, Anthony Tate, Matt Price, Bennie Smith, and Brent Taylor, in their official capacities as Members of the Board of Commissioners of the Shelby County Election Commission, (collectively, "Defendants").  The Plaintiffs seek a preliminary injunction to enjoin Defendants from improperly and discriminatorily enforcing a Shelby County Election Commission policy (hereinafter the "Challenged Rule") that improperly applies and

1

misstates the applicable Tennessee elections laws; specifically, Tenn. R. Civ. P. § 2-7-103 and § 2-7-111, and unconstitutionally infringes upon and limits Plaintiffs from exercising their right to free speech and association and their due process rights, guaranteed under the First and Fourteenth Amendments to the United States Constitution, Plaintiffs' due process rights under the Fifth and Fourteenth Amendments, the Tennessee Constitution, of 42 U.S.C. § 1983, and, as to Plaintiff Johnson Saulsberry, III, the Americans With Disabilities Act (ADA) of 1990, 42 U.S.C. §12101, et seq., as amended. Plaintiffs incorporate their Verified Complaint for Injunctive Relief and Declaratory Judgment filed in Chancery Court case 19-1365-3, as set forth verbatim herein. (see Exh. 5, Complaint).

1. Defendants' Challenged Rule subjects singles out campaign workers; but not similarly situated poll watchers, who elect to serve in a dual role of poll watcher and campaign worker, and subjects Plaintiffs LaTanya Barber Thomas and Johnson Saulsberry, III, to a Class C misdemeanor punishable by a term of imprisonment not greater than 30 days, or a fine not to exceed $50, or both, if they enter within a building when a polling place is located to use the restroom, even though they would not be violating the applicable Tennessee election law under the proper and intended circumstances. (Exh. 4, Attachment A to Verified Complaint Candidates, and Poll Watcher Rules Attachment B to Verified Complaint).

2. The Challenged Rules denies Plaintiffs the fundamental right of and free to freedom of speech uttered during a campaign for political office and freedom of association for a common cause, the distribution of political campaign materials.

3. Defendants has imposed the Challenged Rule even though it is the most restrictive way possible, rather than in the least restrictive manner, in which to enforce Tennessee election laws.

4. The Plaintiffs are likely to be successful on statutory and constitutional grounds, they will continue to suffer irreparable harm without the injunction, through the depravation of their fundamental rights, and there is no risk of substantial harm to others. Further, the public interest — free exercise of free speech and freedom to associate, and due process of law, rand protections of civil rights of the Plaintiffs — would be served by issuance of the injunction. Therefore, Plaintiffs respectfully submit that their Motion should be granted, and an injunction should issue.

## I. FACTS

5. Plaintiff, Patrice Jordan Robinson, is an African American citizen and resident of Memphis, Shelby County, Tennessee, and is a candidate for reelection to the position of Memphis City Council District 3 in the October 3, 2019, City of Memphis Municipal Election. Plaintiff, Patrice Jordan Robinson, brings this action in her individual capacity. (Exh, 1, Robinson, Aff.).

6. Plaintiff, the Greater Memphis Democratic Club, is a political organization of citizens interested in questions on the ballot, interested in presenting the purity of elections, and interested in guarding against abuse of the elective franchise. In connection with the October 3, 2019 Election, the Greater Memphis Democratic Club manages approximately sixty (60) campaign workers hired to distribute campaign materials for candidates running for some of the offices on the ballot in the City of Memphis' October 3, 2019 Municipal Election, in order to cover polling locations where the these candidates do not have campaign workers. All of the campaign workers managed by the Greater Memphis Democratic Club are African American citizens. (Exh, 2, Grant Aff.).

7. Plaintiff, LaTanya Barber Thomas, is an African American citizen and resident of

3

Memphis, Shelby County, Tennessee, and is a campaign worker working at Raleigh United Memphis Church in Memphis, Tennessee, for the Greater Memphis Democratic Club during the 2019 City of Memphis Municipal Election's early voting period, and will be a campaign worker on election day, October 3, 2019. (Exh, 3, Thomas Aff.).

8.  Plaintiff, Johnson Saulsberry III, is an African American citizen of Memphis, Shelby County Tennessee, a resident of Memphis, Shelby County, Tennessee, and is a campaign worker at Glenview Community Center and Greater Memphis Baptist Church, for the Greater Memphis Democratic Club during the 2019 City of Memphis Municipal Election during the early voting period and plans to work as a campaign worker on election day. Mr. Saulsberry has a disabling condition, namely Sickle Cell Anemia. (Exh, 3, Saulsberry Aff.).

9.  Defendant Shelby County Election Commission is a governmental entity licensed and authorized to do business in the State of Tennessee, with its election operations office at 980 Nixon Drive in Memphis, Tennessee.

10.  Defendants, Steve Stamson, Anthony Tate, Matt Price, Bennie Smith, and Brent Taylor, (collectively referred to as the "Shelby County Election Commissioners"} are presently serving as the duly appointed members of the of the Shelby County Election Commission.

11.  On or about August 15, 2019, Defendants issued, or caused to be issued, a document entitled Candidate's meeting. This document pertinently provides:

   **The 100 Foot Zone:**

   - TCA § 2-7-11 (sic) is very clear that there can be no campaigning within 100 feet if the entrances to the building in which the election is taking place. (Notice that it may be entrances, plural). Look for our signs, they will clearly mark the line.

   -  No signs, bumper stickers, posters, literature, or campaign workers are allowed within the 100-foot area or in the building except when casting their own vote. **The practical effect of this is that campaign workers have to find somewhere**

     **else to use the restrooms**. Voters and workers alike are not allowed to wear any article of clothing that advocates for or against any candidate or issue inside the 100-foot zone and the polling place.
(Exh. 4: Attachment A page 2, ("Challenged Rule")).

12. The Memphis Municipal Election is scheduled for October 3, 2019, and the early voting period is September 12-28, 2019 and ends tomorrow. (Exh. 1, Robinson Aff.).

13. Plaintiff Patrice Robinson has campaign workers who have volunteered and/or been hired to distribute outside the 100-Foot Zone at polling places and the Greater Memphis Democratic Club has hired campaign workers to distribute campaign materials for candidates outside the 100-Foot Zone at polling places where the candidates do not have campaign worker coverage. These campaign workers distribute candidates' literature outside the 100-Foot Zone at polling places to educate voters on issues of importance to voters, candidates' positions on these issues, and/or the candidates' qualifications and fitness for office they are seeking, because some voters do not make a final voting decision until they reach the polling place. (Exh. 1, Robinson Aff.; Exh 2, Grant Aff.).

14. Candidates lacking the financial resources to invest heavily in purchasing political advertisements prior to election day and during early voting; and "grassroots" candidates, such as Plaintiff Patrice Jordan Robinson heavily rely upon, the dissemination of their campaign literature by campaign workers who are lawfully allowed to distribute campaign information outside the 100 feet zone of buildings where polling places are located. (Exh 1, Robinson Aff., Exh 2, Grant Aff).

15. Johnson Saulsberry, III is a person with a disability and denial of the right to a use a public restroom at the Glenview Community Center is a denial of the right to access a public building and a violation of the American with Disabilities Act. (Exh. 3, Saulsberry Aff., and Exh. 5, complaint).

16. Not allowing campaign workers to use the restroom results in missed opportunities for campaign workers to distribute a candidate's educational to voters who come to cast their votes while the campaign worker is required, under the new Challenged Rule (Exh. 1, Robinson Aff. and Exh. 2, Grant Aff).

17. Campaign workers in the current election period to distribute candidates' literature at polling locations, work from 11:00 a.m. until 7:00 p.m., every weekday and from 10:00 a.m. until 4:00 p.m. on weekends during the early voting period, and 7:00 a.m. until 7:00 p.m. on Election Day. (Exh. 1, Robinson Aff., Exh. 2, Grant Aff., Exh. 3 Thomas and Saulsberry Aff.).

18. Campaign workers are instructed that they must look for a Shelby County Election Commission mark off of the 100 foot zone at polling locations; that they are must not distribute a candidate's materials beyond this area; that they must cover up any clothing with political messages before entering a building to use the restroom; that they cannot carry signs, bumper stickers, posters, or any literature advocating for or against any candidate or issue; and they cannot engage in conversation with voters or interfere with the election process in any way, when they enter a building where polling places are located to use the rest room. (Exh. 1, Robinson Aff., Exh. 2, Grant Aff., Exh. 3 Thomas and Saulsberry Aff.).

19. The Challenged Rule will result in harm to candidates, because many voters do not make a final decision on the candidates until they reach polling places and Campaign workers who are required to leave the premises to use the restroom will miss opportunities to educate voters on about the candidates and their platforms when they leave the polling places. (Exh. 1, Robinson Aff. and Exh, 2, Grant Aff).

20. In response to a September 17, 2019 letter sent to the election Commission, on behalf

of the Greater Memphis Democratic Club, on September 20, 2019, Linda Phillips stated that some, but not all campaign workers, can enter into building locations to use restrooms and the excluded buildings were campaign workers cannot enter buildings are all in African American polling precincts.  (Exh. 2, Grant Aff., and Exh. A and B to Grant Aff.).

21.     Some to the alternative locations require campaign workers to be absent for up to 20 or 30 minutes, may be in unsafe locations ad may be unsanitary. (Exh. 2, Grant Aff).

## II.     INJUNCTIVE RELIEF

Tennessee courts consider four factors in deciding whether to issue a preliminary injunction: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable harm without the injunction; (3) whether issuance of the injunction would cause substantial harms to others; and (4) whether the public interest would be served by issuance of the injunction. *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001). No single factor is a prerequisite to the issuance of a preliminary injunction; rather the Court must balance all four factors. *Performance Unlimited v. Questar Publishers, Inc.*, 52 F.3d 1373, 1381 (6th Cir. 1995). Before a preliminary injunction may be issued, however, a plaintiff must demonstrate some irreparable injury that necessitates the injunction. *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 104 (6th Cir. 1982).

In the context of a First Amendment claim, the balancing of these factors is skewed toward an emphasis on the first factor. *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 690 (6th Cir. 2014). The Sixth Circuit has stated:

> When a party seeks a preliminary injunction on the basis of the potential violation of the First Amendment, the likelihood of success on the merits often will be the determinative factor. With regard to the factor of irreparable injury, for example, it is well-settled that "loss of First Amendment freedoms . . . unquestionably constitutes irreparable injury."

*Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality)). The primary purpose of a preliminary injunction is to maintain the status quo until a final decision on the merits can be reached.

### A. *Likelihood of Success on the Merits*

The Plaintiffs are likely to succeed on the merits of their claims because (1) Defendants' Challenged Rule is an overly broad application of statutory construction and is a misstatement of the applicable law. Tenn. Code Ann. § 2-7-111, is the applicable Tennessee law which governs restrictions on political activity relating to polling places in the State of Tennessee. Tennessee Code Annotated § 2-7-111 pertinently provides:

> (a)  The officer of elections shall have the sample ballots, voting instructions, and other materials which are to be posted, placed in conspicuous positions inside the polling place for the use of voters. The officer shall measure off one hundred feet (100) from the entrances to the building in which the election is to be held and place boundary signs at that distance.
>
> (b)(1) Within the appropriate boundary as established in subsection (a), and the building in which the polling place is located, the display of campaign posters, signs or other campaign materials, distribution of campaign materials, and solicitation of votes for or against any person, political party, or position on a question are prohibited. No campaign posters, signs or other campaign literature may be displayed on or in any building in which a polling place is located.

*Tenn. Code Ann. § 2-7-111*.

Contrary to the language set forth in the Challenged Rule, Tenn. Code Ann. § 2-7-111, does not provide that "No campaign workers are allowed within the 100-foot area or in the building except when casting their own vote" or that "the practical effect of this [Tenn. Code Ann. § 2-7- 111] is that campaign workers have to find somewhere else to use the restrooms."

Prior to imposing and enforcing the Challenged Rule, the Defendants failed to establish that Plaintiff LaTanya Barber Thomas, Johnson Saulsberry, III, and other campaign workers hired by, and/or managed by and/or volunteering for Plaintiffs, would act in the course of and

scope of their duties as campaign workers ,when they took a break and entered a building where polling places are located to use the restroom.

Prior to imposing and enforcing the Challenged Rule, the Defendants failed to established that Plaintiff LaTanya Barber Thomas, Johnson Saulsberry, III and other campaign workers hired by, and/or managed by, and/or volunteering for Plaintiffs, entered buildings where polling places were located, and thereafter, entered or attempted to enter polling places; or that Plaintiff LaTanya Barber Thomas, Johnson Saulsberry, III and other campaign workers hired by, and/or managed by, and/or volunteering for Plaintiffs, entered buildings where polling places were located, or while inside the 100 foot zone, carried signs, bumper stickers, posters, literature; displayed any article of clothing that advocated for or against any candidate or issue; circulated petitions or engaged in similar activity; spoke to or engaged with voters inside a polling place; or interfered with the election process in any way, when they used the restrooms in buildings where polling places are located.

In addition, Tenn. Code Ann. § 2-7-103, which sets forth who can enter into a polling place, is inapplicable in this case, because the Plaintiffs are not seeking to have campaign workers be allowed to enter the polling place. The Plaintiffs are simply seeking to enter have campaign workers be admitted to the building, not the polling place, to be allowed to use restrooms, as was the case prior to 2018 (Exh. 2, Grant Aff.)

The statute, on its face, does not support the Challenged Rule and therefore, Plaintiffs have a high likelihood of success on the merits. In addition, the right of freedom of speech has broad scope. The constitutional guarantee of free speech includes the right to distribute political literature. *See generally*, *Lovell v. Griffin*, 303 U. S. 444, 452 (1938) and necessarily protects the right to receive it. *Id*. The Challenged Rule creates a significant

burden for Plaintiffs to exercise one of United States citizen's most fundamental constitutional right, the right to free speech and freedom of association and is subject to strict scrutiny.  Moreover, increasingly, states across the country have passed measures to make it harder for Americans—particularly African Americans, the elderly, students, and people with disabilities—to exercise their fundamental right to participate in the electoral process.  This is another instance of the same.  Further, Defendants' actions infringe on the constitutional right to associate for the common  purpose of promoting political candidates and educating voters about candidates, the candidates platforms regarding certain issues, and the candidates qualification and fitness for the offices they are seeking.  *See, NAACP v. Button*, 371 U.S. 415, 444 (1963) (right to associate for common purpose).  There is nothing in this record which would justify the Defendants' injurious interference with Plaintiffs' participation in the political process.

   A. ***Defendants' Continuing Violation of Plaintiffs' Right to Free Speech and Association of Denial of Plaintiff's Due Process right is Causing Irreparable Harm***

To obtain a preliminary injunction, the harm must be "both certain and immediate, rather than speculative or theoretical." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991).  Here, the harm is neither speculative nor theoretical—it is actual and ongoing.  "The loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burn*, 427 U.S. 347, 373 (1976) (citing *New York Times Co. v. United States).*  The Supreme Court has recognized that expression on public issues "has always rested on the highest rung of the hierarchy of First Amendment values." *Carey v. Brown*, 447 U. S. 455, 467 (1980).   "[S]peech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana*, 379 U. S. 64, 379 U. S. 74-75. There is a "profound national commitment" to the principle that

"debate on public issues should be uninhibited, robust, and wide-open." *New York Times Co. v. Sullivan*, 376 U. S. 254, 376 U. S. 270.03 U.S. 173 (1971)). Thus, the standard to be applied is a that Defendants must show a compelling state interest that is applied in the least restrictive manner. Because Plaintiffs are experiencing an ongoing statutory and First Amendment violation, they have established irreparable harm.

B. *A Temporary Injunction Would Not Cause Harm to Others*.

Additionally, the harm to Plaintiff "should the preliminary injunction not be issued must be weighed against the harm to others from the granting of the injunction." *See* United *Food & Commercial Workers Union*, Local 1099 v. Sw. Ohio Reg'l Transit Auth., 163 F.3d 341, 363 (6th Cir. 1998). Nothing on the record indicates that granting the requested injunctive relief will harm others. The Plaintiffs have no intention of interfering with the electoral process in any way and will comply with the applicable to Tennessee Election Laws if allowed to enter buildings where polling places are located in order to use the restrooms.

C. ***Defendants' Continuing Violation of Plaintiffs' Right to Free Speech and Association of Denial of Plaintiff's Due Process right is Causing Irreparable Harm***

To obtain a preliminary injunction, the harm must be "both certain and immediate, rather than speculative) theoretical." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991). Here, the harm is neither speculative nor theoretical—it is actual and ongoing. "The loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burn*, 427 U.S. 347, 373 (1976) (citing *New York Times Co. v. United States)*. The Supreme Court has recognized that expression on public issues "has always rested on the highest rung of the hierarchy of First Amendment values." *Carey v. Brown*, 447 U. S. 455, 467 (1980). "[S]peech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana*,

11

379 U. S. 64, 379 U. S. 74-75. There is a "profound national commitment" to the principle that "debate on public issues should be uninhibited, robust, and wide-open." *New York Times Co. v. Sullivan*, 376 U. S. 254, 376 U. S. 270.03 U.S. 173 (1971)).  Because Plaintiffs are experiencing an ongoing statutory and First Amendment violation, they have established irreparable harm.

.            ***D. Whether Public Interest Would Be Served***

"[T]he determination of where the public interest lies is dependent on a determination of the likelihood of success on the merits of the First Amendment challenge because it is always in the public interest to prevent the violation of a party's constitutional rights." *Liberty Coins, LLC*, 748 F.3d at 690.  Since Plaintiffs have established a likelihood of success on the merits of their First Amendment rights, the public interest would be served by grating the preliminary injunction.

### III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask this Court to enter an order preliminarily enjoining Defendants from interfering with the Plaintiffs right to free speech, due process rights and civil rights, and grant Plaintiffs the relief prayed for in Plaintiffs' Verified Complaint.  (Exh. 5, Complaint).  The Plaintiffs reserve the right to further supplement this argument prior to Monday, given the short time period Plaintiffs has to prepare this Motion and Memorandum, and the matters not being fully briefed herein.

                    Respectfully Submitted,

                    NETTLES HARRIS LAW FIRM

                    /s/Linda Nettles Harris (B.P.R. 012981)
                    1331 Union Avenue, Suite 1033
                    Memphis, TN 38104
                    Ph. (901) 522-2747
                    Fax (901) 522-2749
                    lharris@nettlesharrislaw.com

Certificate of Service

I, Linda Nettles Harris, certify that a copy of this motion was served through the Courts electronic filing system, upon the attorney for Defendants. Mr. Pablo Varela, on this 27th day of September 2019.

/s/Linda Nettles Harris