IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| PATRICE JORDON ROBINSON, GREATER MEMPHIS DEMOCRATIC CLUB, LATANYA BARBER THOMAS, and JOHNSON SAULSBERRY, III,<br><br>    Plaintiffs,<br><br>vs.<br><br>SHELBY COUNTY ELECTION COMMISSION, LINDA PHILLIPS in her official capacity as Administrator of the Shelby County Election Commission, STEVE STAMSON, ANTHONY TATE, MATT PRICE, BENNIE SMITH, and BRENT TAYLOR, in their Official Capacities as Members of the Board of Commissioners of the Shelby County Election Commission,<br><br>    Defendants. | Docket No. 19-cv-02653-JTF-tmp<br><br>[FORMERLY Shelby County Chancery Court, Part III—Case No. CH-19-1365-3] |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF LAW**

COMES NOW, the Shelby County Election Commission, Linda Phillips in her official capacity as Administrator of the Shelby County Election Commission, Steve Stamson, Anthony Tate, Matt Price, Bennie Smith, and Brent Taylor, in their Official Capacities as Members of the Board of Commissioners of the Shelby County Election Commission, ("Defendants" or "SCEC"), and in response to Plaintiffs' motion for preliminary injunction, hereby submits *Defendants' Response in Opposition to Plaintiff's Motion for Preliminary Injunction and Memorandum of Law*, and for their cause would show the Court as follows:

1

FACTS AND BACKGROUND

1. Defendants are charged with administrating and running the October 3, 2019 Memphis Municipal election. Election day is October 3, 2019 for which the early voting period was September 12, 2019 through September 28, 2019.

2. Plaintiffs filed the present lawsuit in the Chancery Court of Shelby County, Tennessee on September 26, 2019.

3. Defendants removed this case to Federal Court on September 27, 2019.

4. Plaintiffs are a candidate for Memphis City Council District 3, The Greater Memphis Democratic Club ("GMDC"), a for-profit corporation for which candidates pay money to in exchange for being placed on a sample ballot and the use of campaign workers for the various candidates at early voting and election day precincts, and two campaign workers hired by the club (Verified Complaint PageID 89-90, ¶¶ 1-4).

5. Plaintiffs seek a Preliminary injunction to prevent the enforcement of SCEC's policy which prohibits campaign workers from entering polling places for purposes other than to vote, including using bathrooms (PageID 34, ¶2).

6. The SCEC policy of prohibiting campaign workers from using bathrooms within polling places derives from the Tennessee Coordinator of Election's interpretation of Tennessee Election Law Statutes as well as the *Barnes v. Kurita* case (PageID 67; *See also* EXHIBIT 1). Coordinator Mark Goins determined that Tenn. Code Ann. §§ 2-7-103 and 2-7-111 operate to preclude campaign workers from entering polling places to use the bathroom or for any other purpose except to vote.

LAW AND ARGUMENT

Plaintiffs are not entitled to a Preliminary Injunction in this case, they have failed to add an indispensable party, and they also do not have standing to bring this case nor have they stated any claim for relief. The complained-of policy was enacted by the SCEC as a result of the interpretation of Tennessee Coordinator of Elections, who has not been named by Plaintiffs, has the duty to authoritatively interpret Tennessee election law. For these reasons the Court should DENY Plaintiffs' Preliminary Injunction demand and dismiss this case.

I.      **Plaintiffs cannot satisfy the elements for a Preliminary Injunction to issue**

The Court should deny Plaintiff's demand for Preliminary Injunction because they do not satisfy the elements for a preliminary injunction. When notice has been provided to the opposing party and a hearing scheduled, the Court applies the same standards to the issuance of a preliminary injunction as when determining whether to issue a temporary restraining order ("TRO"). *Barron v. PGA Tour, Inc.*, 670 F. Supp. 2d 674, 683, n. 8 (W.D. Tenn. 2009). A TRO is a form of extraordinary relief granted only if the movant carries his burden of proving the circumstances clearly demand it. *Service Employees International Union Local 1 v. Husted*, 698 F.3d 341, 344 (6th Cir. 2012).

A preliminary injunction is an "extraordinary measure" that is "one of the most drastic tools in the arsenal of judicial remedies." *ACLU v. McCreary County*, 354 F.3d 438, 444 (6th Cir. 2003) (citing *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d. Cir. 1986) and *Detroit Newspaper Publisher's Ass'n v. Detroit Typographical Union No. 18*, 471 F.2d 872, 876 (6th Cir. 1972)). Preliminary injunctions should not be granted when the outcome in a case is doubtful or does not fall within well-established principles of law. *Id*.

"Under Federal Rule of Civil Procedure 65, the court must apply a four-factor test to determine whether to issue a temporary restraining order.8 The court must consider: (1) whether the party seeking the order has shown a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *Third Party Solutions, Inc. v. Express Scripts, Inc.*, 298 Fed.Appx. 402, 403 (6th Cir.2008) (citing *Certified Restoration Dry Cleaning Network v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir.2007)

### a. Plaintiffs are not likely to succeed on the merits

"When a party seeks a preliminary injunction on the basis of a potential constitutional violation, 'the likelihood of success on the merits often will be the determinative factor.'" *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir.2012) (citations omitted). To demonstrate a likelihood of success on the merits, a party, while not required to prove her case, must show more than a mere possibility of success. *Certified Restoration Dry Cleaning Network*, 511 F.3d at 543. The Plaintiffs' likelihood of success on the merits of this case is questionable at best since the central theme in their complaint is the application of Tenn. Code Ann. §§ 2-7-103 and 2-7-111, both of which have already been upheld as constitutionally permissive restrictions on First amendment rights by the United States Supreme Court. *See Freeman v. Burson*, 504, U.S. 191 (1991)[1].

---

[1] In *Freeman v. Burson*, 504 U.S. 191 (1992), the U.S. Supreme Court upheld the constitutionality of Tenn. Code Ann. § 2-7-111. After a thorough review of the history that led to states using a secret ballot system and restricting campaign activity in and around polling places, the Court held, "[w]e find that this widespread and time-tested consensus demonstrates that some restricted zone is necessary in order to serve the States' compelling interests in preventing voter intimidation and election fraud." *Id.* at 206. The Court found that there was "… ample evidence that political candidates have used campaign workers to commit voter intimidation or electoral fraud." *Id.* at 207. The Court went on to acknowledge that the "State of Tennessee has decided that these last 15 seconds before its citizens enter the polling place should be their own, as free from interference as possible." *Id.* at 210. After weighing the rights of the candidates to communicate with voters against the rights of the voters to be free from campaign activity before casting

County election commissions in Tennessee are appointed by the Tennessee State Election Commission. Tenn. Code Ann. § 2-12-101(a). The Tennessee Coordinator of Elections is the chief administrative election officer of the State who is appointed by the Tennessee Secretary of State. Tenn. Code Ann. § 2-11-201. The Coordinator of Elections is charged with maintaining uniformity in the application, operation, and interpretation of the election code. Tenn. Code Ann. § 2-11-201(b). The Coordinator of Elections has determined that Tenn. Code Ann. §§ 2-7-103 and 2-7-111, preclude campaign workers from entering polling places for the purpose of using bathrooms because they are not one of the enumerated classes of persons allowed in a polling place under § 2-7-103. Plaintiffs have not named the Coordinator of Elections in this case.

Second, the First Amendment guarantees the freedoms of speech and association; however, these freedoms are not implicated by precluding campaign workers who are campaigning for candidates outside polling places from entering the polling places to use the bathroom. The restrictions on entering polling places by campaign workers in the complained-of policy are similar in scope and effect as restrictions on the First Amendment in Tenn. Code Ann. §§ 2-7-103 and 2-7-111 which the United States Supreme Court has held to be constitutionally permissible restrictions. *See Freeman v. Burson*, 504, U.S. 191 (1991).

The Fourteenth Amendment provides that: "no . . . State . . . shall deprive any person of life, liberty, or property, without due process of law." U.S. CONST. Amend. XIV, §1. Title 42 U.S.C. § 1983 does not create or confer substantive rights; rather it provides a remedy when rights protected by the United States Constitution or other federal statutes are violated. *Thompson v. Memphis City School Board of Education*, No. W2010-02631-SC-R11-CV, 2012 WL 6643905 at *17-19 (Tenn. Sup. Ct. Dec 21, 2012) (citing *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct 807,

---

the ballot, the Court concluded, "[g]iven the conflict between these two rights, we hold that requiring solicitors to stand 100 feet from the entrances to polling places does not constitute an unconstitutional compromise." *Id*. at 211.

127 L.Ed.2d 114 (1994)); 42 U.S.C.A. §1983. Plaintiffs do not allege a property interest in using bathrooms in polling places while campaigning for candidates at polling places. A property interest must be created and defined by existing rules or understandings that stem from an independent source such as state law. *Rowe v. Board of Educ. of City of Chattanooga*, 938 S.W.2d 351 (Tenn. 1996) (citing *Regents v. Roth*, 408 U.S. 564, 577 (1972)). Indeed, there is no basis for such a property interest and therefore the policy does not violate any due process rights of Plaintiffs under the Fifth or Fourteenth Amendment of the United States Constitution.

The Americans with Disabilities Act ("ADA") is not applicable to this case. As applied to voting locations the ADA requires local election commissions to provide access to voters with disabilities to allow them to vote. The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.A. § 12132 (West). Campaign workers campaigning outside the 100-foot boundary of a polling place are not voters, therefore the ADA is inapplicable as to Plaintiffs allegations. Further, campaign workers who are not allowed in polling places other than to vote are not being excluded from participation in a benefit or program instituted by a government by reason of their disability. The prohibition is applied equally to all campaign workers across Shelby County because they do not fall within the class of persons enumerated in Tenn. Code Ann. § 2-2-103 who are permitted in polling places.

Finally, Plaintiffs have not stated any particularized harm to themselves under the policy. The SCEC policy is implemented uniformly across all Shelby County polling locations during both early voting and on election day and is applicable to all campaign workers equally.

Consequently, for these reasons and more, Plaintiffs are not likely to succeed on the merits in this case.

### b. Plaintiffs cannot show an immediate irreparable harm

In order to obtain injunctive relief, a plaintiff must demonstrate that she will suffer irreparable harm without such relief. "Such harm must be 'likely,' not just possible." *Tri-County Wholesale Distributors, Inc. v. Wine Grp.*, Inc., No. 10-4202, 2012 WL2478357, at *5 (6th Cir. June 29, 2012). Beyond merely alleging that Plaintiffs will suffer immediate irreparable harm, Plaintiffs have failed to state what harm they will suffer if a Preliminary Injunction does not issue. Further, the complained-of policy has been in place and Plaintiffs have been aware of the policy since August 15, 2019 when the SCEC issued its instructions, guidelines and policies to all campaigns. In fact, Plaintiffs acknowledge they have known of the policy since August 15th (PageID 35, ¶; PageID 88). It is difficult to believe Plaintiffs have been subjected to the policy during all of early voting but only now do they allege that they will suffer an immediate irreparable harm if a Preliminary Injunction does not issue. In short, Plaintiffs have not suffered any immediate irreparable harm by having to find public bathrooms or other accommodations while they are campaigning outside the 100-foot boundary at polling places. Further their constitutional rights have not in any way been unconstitutionally threatened or infringed upon by the policy. *See Freeman v. Burson*, 504, U.S. 191 (1991).

### c. The harm to Defendants is far greater to the alleged harm to Plaintiffs if a Preliminary Injunction were to issue

A court must also consider whether issuing a TRO or preliminary injunction will cause substantial harm to others, in this case the SCEC and the voting public. This test is sometimes viewed as the balancing of hardships test. *Friendship Materials, Inc. v. Michigan Brick, Inc.*,679

F.2d 100, 104 (6th Cir. 1982); *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000). The United States Supreme Court has held that the interests of the voting public outweigh the interest of campaign workers inside polling places such that restricting campaign workers to the 100-foot boundary in Tenn. Code Ann. § 2-7-111 is a constitutionally permissible restriction on the First amendment rights of campaign workers. *See Freeman v. Burson*, 504, U.S. 191 (1991). Further, Tenn. Code Ann. § 2-7-103(a) clearly defines five categories of persons allowed in polling places. Campaign workers do not fall into any of the categories of persons who may enter a polling place except when they are voting.

Defendants will be harmed to a far greater extent by allowing campaign workers to enter polling places to use bathrooms than Plaintiffs are harmed by having to find alternate facilities. Defendants would not hve sufficient time to retrain the hundreds of poll workers hired to run the polls at the precincts. These workers were not trained to police campaign workers while they are entering precincts to use the bathroom.  In fact, they have been trained that campaign workers are not permitted to enter poling places for any reasons other than to vote.  Further, if a Preliminary Injunction were to issue, poll workers would not only have to make sure campaign workers do not enter precincts with campaign materials or campaign paraphernalia, but would also have to police the bathrooms to ensure that campaign materials were not "inadvertently" left behind in the polling place. These duties would greatly tax Defendant and their poll workers on election day who are serving the public by trying to make sure the election is run smoothly.  They were never intended to become hallway and bathroom monitors.

### d. The Issuing of a Preliminary Injunction would not serve the public interest

"It is always in the public interest to prevent a violation of a party's constitutional rights." *Connection Distrib. Co. v. Reno*, 154 F.3d 288 (6th Cir. 1998) (quoting *G & V Lounge, Inc. v.*

*Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994)); However, the United States Supreme Court in *Burson* held that excluding campaign workers from precincts and limiting them to the 100-foot boundary pursuant to Tenn. Code Ann. §§ 2-7-103 and 2-7-111 does not unconstitutionally infringe on the constitutional rights of campaign workers. *Freeman v. Burson*, 504, U.S. 191 (1991). The Court noted that Tennessee has a compelling interest in preventing voter intimidation and election fraud by having a restricted zone around polling places *Id*. at 206. The SCEC policy prohibiting campaign workers from entering polling places for any reason other than to vote serves to further these compelling state interest.

The abuse of bathroom use by candidates and campaign workers inside polling places is not new to Tennessee. Candidates and campaign workers have used the excuse in the past to enter polling places to campaign inside polling places in attempts to influence votes. In the 2008 Senator Tim Barnes contested the primary election in Tennessee's 22nd Senatorial District of Rosalind Kurita before the State Executive Committee of the Tennessee Democratic Party. *Kurita v. State Primary Bd. of Tennessee Democratic Party*, No. 3:08-0948, 2008 WL 4601574, at *2 (M.D. Tenn. Oct. 14, 2008), aff'd, 472 Fed. Appx. 398, 2012 WL 2580791 (6th Cir. 2012). Senator Tim Barnes, who lost the primary by 19 votes, successfully challenged Senator Kurita's victory arguing that, among other things, Senator Kurita and her campaign manager violated the campaign-free zone by entering a polling place numerous times, repeatedly speaking with and influencing voters. (EXHIBIT 1, p. 65-68, 194). Senator Kurita claimed she entered the polling place to use the bathroom. (EXHIBIT 1, p. 194) After the hearing before the State Executive Committee of the Tennessee Democratic Party, the Executive Committee held that Senator Kurita's actions had so tainted the primary election that it rendered the results "incurably uncertain" and then voided Senator Kurita's victory. *Id*.

The public has a significant interest in fair and free elections. The SCEC along with other Tennessee county election commissions try to ensure the elections they run as fairly and as accurate as possible. One way to ensure that elections are fair is to ensure voters are free from any undue influence from campaign workers and candidates within polling places. In fact, if they are not in a polling place to vote, campaign workers and candidates are not within the category of persons allowed in a polling place under Tennessee law[2]. The alleged interest in allowing campaign workers to enter polling places to use the bathroom pales in comparison to the public's significant interest in being free from the undue influence of campaign workers or candidates in polling places.

## II.    Plaintiffs have failed to add a necessary party

The complained of policy was implemented at the direction of the Tennessee Coordinator of Elections. Presumably it is based on the Coordinator's interpretation of Tenn. Code Ann. §§ 2-7-103 and 2-7-111. The Coordinator of Elections is granted authority under the Tennessee election code to authoritatively interpret Tennessee election law. Tenn. Code Ann. § 2-11-202(a) (4). The Coordinator is also required to "[a]dvise election commissions, primary boards, and administrators of elections as to the proper methods of performing their duties." *Id*. Moreover, [t]he coordinator of elections is the chief administrative election officer of the state and shall obtain and maintain uniformity in the application, operation and interpretation of the election code." Tenn. Code Ann. § 2-11-201(b) Consequently, local county election commissions must abide by the Coordinator's interpretations of the election code as the chief administrative election officer of the state.

Because the Coordinator of Elections is the chief administrative election office of the state and since the complained-of policy was implemented based on the Coordinator's interpretation of

---

[2] SeeTenn. Code Ann. § 2-7-103(a).

state election law, Plaintiffs have failed to join an indispensable party by failing to name the Coordinator of Elections of the State of Tennessee in this action.

### III. The Court lacks Subject Matter Jurisdiction due to Plaintiffs lack of standing

Plaintiffs lack the standing necessary to vest jurisdiction in this Court. Nothing in the Plaintiffs' Verified Complaint alters this inescapable conclusion.

"The first and fundamental question presented by every case brought to the federal courts is whether it has jurisdiction to hear a case." *Evans v. Allen*, No. 3:13-CV-480-TAV-CCS, 2014 WL 585392, at *1 (E.D. Tenn. Feb. 14, 2014) (quoting *Douglas v. E.G. Baldwin & Assocs.*, 150 F.3d 604, 607 (6th Cir.1998), abrogation on other grounds recognized by *Heartwood, Inc. v. Agpaoa*, 628 F.3d 261, 266 (6th Cir.2010)). "Standing goes to a court's subject matter jurisdiction." *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir.2013) (internal quotation and brackets omitted). Thus, a complaint must be dismissed for lack of subject matter jurisdiction if the plaintiff lacks standing to bring suit. See, e.g., *Taylor v. KeyCorp*, 680 F.3d 609 (6th Cir.2012) (affirming district court's grant of Rule 12(b) (1) motion to dismiss for lack of standing); *Allstate Ins. Co. Global Med. Billing, Inc.*, 520 F. App'x 409, 410–11 (6th Cir.2013).

The requirement of standing is "rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). Plaintiffs have the burden "clearly to allege facts demonstrating that [they are] proper part[ies] to invoke judicial resolution of the dispute." *Warth v. Seldin*, 422 U.S. 490, 518 (1975). Furthermore, standing "must affirmatively appear in the record"; it cannot be "inferred argumentatively from averments in the pleadings." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990). And the inquiry into whether plaintiffs have standing should be "especially rigorous" where, as here, Plaintiffs seek to have the

actions of a sovereign state declared unconstitutional. *Crawford v. U.S. Dept. of Treasury*, 868 F.3d 438, 457 (6th Cir. 2017) (citing *Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1147 (2013)).

The "irreducible constitutional minimum" of standing is that each plaintiff must allege an actual or imminent injury that is traceable to the defendant and redressable by the court for each claim asserted. *Lujan v. Defendants of Wildlife*, 504 U.S. 555, 560-62 (1992). An injury must be an "injury in fact," i.e., "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560 (citations omitted). An injury must be both "concrete and particularized," and for an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Spokeo*, 136 S.Ct. at 1548-49 (emphasis in original) (citations omitted). For an injury to be "concrete," it must be "'de facto'; that is, it must actually exist." *Id*.

None of these harms alleged in Plaintiffs' Verified Complaint are sufficient to demonstrate that Plaintiffs have the standing necessary to invoke the jurisdiction of this Court.

### a. Standing of Patrice Jordan Robinson

Plaintiff Robinson is a candidate for reelection to the position of Memphis City Council District 3. (PageID 89, ¶ 1). Plaintiff Robinson's allegations center on the fact that her campaign lacks the financial resources to invest heavily in political advertisements and relies upon the dissemination of her campaign literature by campaign workers at polling places and that not allowing campaign workers to use bathrooms within polling precincts "will logically" result in missed opportunities for campaign workers to distribute her campaign materials to prospective voters. (PageID 54, ¶ 4-5). Though stated with language of certainty, Plaintiff Robinson cannot be certain whether or not taking breaks to use the bathroom will actually result in missed

opportunities. Would not the same opportunities be missed if the campaign workers were inside the polling places using the bathrooms?

Thus, Plaintiff Robinson has only asserted conclusory allegations that are not the sort of concrete and specific factual allegations from which this Court could infer that campaign workers who find alternate locations to use bathrooms will miss opportunities to distribute campaign materials to prospective voters. Consequently, these allegations do not constitute "injury-in-fact" for purposes of standing.

    b. **Standing of Greater Memphis Democratic Club**

In order to pursue the claims set forth in the Verified Complaint, Plaintiff GMDC, as an organization, must allege facts sufficient to establish that it has either organizational standing or associational standing.

Organizational standing is the right of an organization to sue on its own behalf rather than through its members. "An organization has standing to sue on its own behalf if it meets the same standing test that applies to individuals." *Spann v. Colonial Village, Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990). Thus, in order to have organizational standing, Plaintiff must show (1) injury in fact, (2) a causal connection between the injury and conduct complained of, and (3) the likelihood that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61.

Here, Plaintiff GMDC has not alleged that it as an organization would suffer any injury under the complained-of policy in any way. For this reason GMDC does not have organizational standing.

Nor does GMDC demonstrate any facts to confer associational standing. In order to have associational standing, an organizational plaintiff must show that:

> (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the

> organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 342-43 (1977); see also *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 294-95 (6th Cir. 1997). Organizational plaintiffs are "obligated to allege facts sufficient to establish that one or more of [their] members has suffered, or is threatened with, any injury." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 487 n.23 (1982). Such obligation includes identifying the member or members of plaintiff organizations that have suffered, or will suffer, harm. *See Barry v. Corrigan*, 79 F.Supp.3d 712, 724 (E.D. Mich. 2015) (finding that because one of the plaintiffs, who was a member of the organization, had standing, the organization had association standing on behalf of its members). A "mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself." *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972).

GMDC has failed to identify its members in this case and for this reason the GMDC does not have either associational standing to sue in this case either.

### c. Standing of Latanya Barber Thomas and Johnson Saulsberry, III

Plaintiffs Thomas and Saulsberry are campaign workers hired by the GMDC to campaign for candidates who have paid GMDC to do so. Plaintiffs Thomas and Saulsberry allege they plan to work as campaign workers on election day, October 3, 2019 and that because Defendants fail to establish that they would act contrary to law by violating the "no campaigning in polling places" law while using the bathroom that Defendants have violated their due process rights by the implementation of the SCEC's policy.

The harms alleged by Plaintiffs Thomas and Saulsberry are not particularized to the individual Plaintiffs; rather, these harms are allegedly suffered by all campaign workers in Shelby County. While Plaintiffs allege that the SCEC is applying the policy differently to different campaign workers, that is not the case. The letter provided to Plaintiffs' counsel from the SCEC makes it clear that any public use of alternative entrances at any polling places is not within the discretion of the SCEC but solely in the discretion of the building owner. (PageID 67). Therefore, the SCEC policy is applicable equally across all polling places in Shelby County.

The Supreme Court has consistently held that a plaintiff raising only such a generally available grievance about government—claiming only harm to his and other citizens' interest in the proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy. *See Lujan*, 504 U.S. at 555; Allen v. Wright, 468. "'A federal court is not a forum for generalized grievances, and the requirement of such a personal stake ensures that courts exercise power that is judicial in nature.'" *Williams v. Thomas*, No. 2019 WL 1905166, at *3 (W.D. Tenn. Apr. 29, 2019) (quoting *Gill*, 138 S.Ct. 1916, 2018).

The injuries complained of by Plaintiffs Thomas and Saulsberry concerning the County-wide policy are "plainly undifferentiated" and "shared in substantially equal measure" by all campaign workers in Shelby County. *Warth v. Seldin*, 422 U.S. at 499. Accordingly, the bar on generalized grievances as a basis for Article III standing applies in the instant case for a simple reason: Plaintiffs are not affected by the SCEC policy in any "personal and individual way.*" Davis v. Detroit Pub. Sch. Cmty. Dist*., 889 F.3d 437, 444 (6th Cir. 2018) (quoting *Spokeo,* 136 S.Ct. at 1548). On the contrary, the policy is applicable across all Shelby County and affects all campaign workers equally.

### IV. Plaintiffs have failed to state a claim for which relief can be granted

The level of scrutiny to be applied in evaluating a state election law or practice depends on the degree of burden imposed on the fundamental right to vote. *See Ohio Council 8 Am. Fed'n of State v. Husted*, No. 14-3678, 2016 WL 537398, at *3 (6th Cir. Feb. 11, 2016); *Green Party of Tenn. v. Hargett*, 767 F.3d 533, 545-46 (6th Cir. 2014); *Obama for Am. v. Husted*, 697 F.3d 423, 429 (6th Cir. 2012). An election regulation that imposes no burden on the fundamental right to vote and does not discriminate on the basis of a protected class is subject only to rational basis review. *Obama for Am.*, 697 F.3d at 429. Presently, the SCEC policy does not impose an unconstitutional burden on any fundamental right and does not discriminate on the basis of any protected class.

"[P]rinciples of federalism . . . limit the power of federal courts to intervene in state elections," and only "in extraordinary circumstances will a challenge to a state . . . election rise to the level of a constitutional deprivation." *Id.* (internal quotation marks omitted); *see also, e.g.*, *Gonzalez- Cancel v. Partido Nuevo Progresista*, 696 F.3d 115, 119 (1st Cir. 2012); *Burton v. State of Ga.*, 953 F.2d 1266, 1268 (11th Cir. 1992). For the reasons explained below, this case—whether campaign workers can breach the 100-foot boundary around polling places to use the bathroom—does not present such extraordinary circumstances.

#### a. Section 1983 Claims

A claim under 42 U.S.C. § 1983 has two elements: "'(1) the defendant must be acting under the color of state law, and (2) the offending conduct must deprive the plaintiff of rights secured by federal law.'" *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008) (quoting *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir.1998)); *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). In this matter, the 100-foot boundary law has been upheld as

constitutional by the United States Supreme Court. *See Burson v. Freeman*, *supra*. Plaintiffs have sued over the "right" to enter the polling place while campaigning in order to use the restroom. No such federal right to use the bathroom within a particular location exists; therefore, a claim under § 1983 must fail because no right secured under federal law is deprived of the plaintiffs.

    b. 14th Amendment Due Process Claims

    The Sixth Circuit has held that the "'Due Process Clause is implicated . . . in the exceptional case where a state's voting system is fundamentally unfair.'" *Warf v. Bd. of Elections of Green Cnty., Ky.*, 619 F.3d 553, 559 (6th Cir. 2010) (quoting *League of Women Voters v. Brunner*, 548 F.3d 463, 478 (6th Cir. 2008)). As relevant here, a State's election practices may violate a voter's substantive due process rights if it employs "non-uniform rules, standards and procedures that result in significant disenfranchisement and vote dilution or significantly departs from previous state election practice." *Id.* (internal quotation marks and citation omitted). None of these irregularities is present in this case. The Sixth Circuit has also held that a due process claim may also be implicated where a state's election process impairs citizens' ability to participate in state elections on an equal basis with other qualified voters." *George v. Hargett*, 879 F.3d 711, 727 (6th Cir. 2018) (citing *Phillips v. Snyder*, 836 F.3d 707, 716 (6th Cir. 2016)). In this matter, the 100-foot boundary rule is applied equally to all campaign workers at all polling places. The campaign workers themselves are not deprived of the right to vote because the statute gives an explicit exception to the 100-foot boundary for when the campaign workers choose to vote. Plaintiffs' complaint fails to state a claim upon which relief can be granted for violation of the Due Process Clause of the Fourteenth Amendment.

### c. Tennessee Constitution and Tennessee Statute Claims

To the extent Plaintiff seek declaratory or injunctive relief against the State Defendants in their official capacity for violations of the Tennessee Constitution and Tennessee Statutes, such claims are barred by Eleventh Amendment sovereign immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984); s*ee also In re Ohio Execution Protocol Litigation*, 709 Fed. Appx. 779, 782- 83 (6th Cir. 2017); *Ernst v. Rising*, 427 F.3d 351, 368 (6th Cir. 2005); *Sherman v. State of Tennessee, et al.*, No. 16-02625, 2017 WL 2589410, at *7 (W.D. Tenn. June 14, 2017). Additionally, Plaintiffs' complaint fails to state a claim for relief pursuant to 42 U.S.C. § 1983 for violations of the Tennessee Constitution or Statutes as claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).

Finally, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, this Court should decline to exercise jurisdiction, given that Plaintiffs' federal law claims should be dismissed for lack of standing and/or for failure to state a claim for violations of due process and equal protection. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims. *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996).

Presently, Plaintiffs have made a general demand for relief that the Court declare the actions/omissions of the Defendants unconstitutional under the Tennessee State Constitution and Tennessee Statutes, but Plaintiffs have not stated how the policy violates the Tennessee Constitution or Tennessee Statutes. Under a plain reading of Fed. R. Civ. P. 8, Plaintiffs have failed to plead a claim for relief, and applying the plausibility standard for pleading certainly causes this claim to fail. Even if a claim for relief were stated, the Court should decline supplemental jurisdiction because the issue of constitutionality has already been decided in United States Supreme Court in *Burson* and (2) because for the reasons above, Plaintiffs have failed to state a claim for all the federal claims alleged in their Verified Complaint.  Thus the Court should exercise the deference federal courts usually pay to state election processes when a plaintiff asks the federal court to interpret and apply state law to a state election process.

### d. ADA Claims

Plaintiffs have not made out a claim under the ADA because they do not fall into the class of individuals the ADA applies to in the election context. The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.A. § 12132 (West). Thus,  in the context of voting and elections, the ADA requires that governments do not preclude those with disabilities, by reason of their disability from participating in voting. *see also* 52 U.S.C. § 10508 (West).

Campaign workers campaigning outside the 100-foot boundary of a polling place are not voters, therefore they are not the persons the ADA would protect in the voting context.  Thus, the ADA is inapplicable as to Plaintiffs complaint. Further, campaign workers who are not allowed in polling places other than to vote are not being excluded from participation in a benefit by reason

of a disability. They are prohibited from entering a polling place pursuant to Tennessee State law that only allows the enumerated class of persons in Tenn. Code Ann. § 2-2-103 as persons who are allowed in polling places during elections. Therefore, Plaintiffs have failed to state a claim under the ADA.

## CONCLUSION

For the above stated reasons, the Court should Deny Plaintiffs Preliminary Injunction and dismiss this case with prejudice.

Respectfully submitted,

HARRIS SHELTON HANOVER WALSH, PLLC

By: */s/ Pablo A. Varela*
John L. Ryder #08258
Pablo A. Varela #29436
40 S. Main Street, Suite 2210
Memphis, Tennessee 38103
Tel: (901) 525-1455
Fax: (901) 526-4084
jryder@harrisshelton.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a copy of the foregoing was served on Linda Nettles Harris, attorney for Plaintiffs, via the Court's ECF system on this the 29th day of September 2019.

*/s/ Pablo A. Varela*
Pablo A. Varela